# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA

## MISCELLANEOUS NO. 3:07-MC-47
### (Doc. No. 4)

| | |
|---|---|
| IN RE: | ) |
| | ) |
| STANDING ORDER ON PROTOCOL | ) |
| FOR DISCOVERY OF | ) |
| ELECTRONICALLY STORED | ) |
| INFORMATION IN CIVIL CASES | ) |
| BEFORE THE HONORABLE | ) |
| FRANK D. WHITNEY | ) |
| | ) |

    1.  On December 1, 2006, amendments to Fed.R.Civ.P. 16, 26, 33, 34, 37, and 45, and Form 35, became effective, creating a comprehensive set of rules governing discovery of electronically stored information, ("ESI").

    Given these rule changes, it is advisable to establish a protocol regarding, and a basic format implementing, only those portions of the amendments that refer to ESI.  The purpose of this Standing Order on the Protocol for Discovery of Electronically Stored Information (the "Protocol") is to facilitate the just, speedy, and inexpensive conduct of discovery involving ESI in civil cases, and to promote, whenever possible, the resolution of disputes regarding the discovery of ESI without Court intervention.

    While this Protocol is intended to provide the parties with a comprehensive framework to address and resolve a wide range of ESI issues, it is not intended  to be an inflexible checklist. The Court expects that the parties will consider the nature of the claim, the amount in

---

[1] The Protocol is modeled after the "Suggested Protocol for Discovery of Electronically Stored Information" as set forth by the United States District Court for the District of Maryland.  The full document may be found at http://www.mdd.uscourts.gov/new/new/ESIProtocol.pdf.

controversy, agreements of the parties, the relative ability of the parties to conduct discovery of ESI, and such other factors as may be relevant under the circumstances. Therefore not all aspects of this Protocol may be applicable or practical for a particular matter, and indeed, if the parties do not intend to seek discovery of ESI it may be entirely inapplicable to a particular case. The Court encourages the parties to use this Protocol in cases in which there will be discovery of ESI, and to resolve ESI issues informally and without Court supervision whenever possible. In this regard, compliance with this Protocol may be considered by the Court in resolving discovery disputes, including whether sanctions should be awarded pursuant to Fed.R.Civ.P. 37;

## SCOPE

2. This Protocol applies to the ESI provisions of Fed.R.Civ.P. 16, 26, 33, 34, or 37, and, insofar as it relates to ESI, this Protocol applies to Fed.R.Civ.P. 45 in all instances where the provisions of Fed.R.Civ.P. 45 are the same as, or substantially similar to, Fed.R.Civ.P. 16, 26, 33, 34, or 37. In such circumstances, if a Conference pursuant to Fed.R.Civ.P. 26(f) is held, it may include all parties, as well as the person or entity served with the subpoena, if said Conference has not yet been conducted. If the Conference has been conducted, upon written request of any party or the person or entity served with the subpoena, a similar conference may be conducted regarding production of ESI pursuant to the subpoena. As used herein, the words "party" or "parties" include any person or entity that is served with a subpoena pursuant to Fed.R.Civ.P. 45. Nothing contained herein modifies Fed.R.Civ.P. 45 and, specifically, the provision of Rule 45(c)(2)(B) regarding the effect of a written objection to inspection or copying of any or all of the designated materials or premises.

3.     In this Protocol, the following terms have the following meanings:

A.     "Meta-Data" means: (i) information embedded in a Native File that is not ordinarily viewable or printable from the application that generated, edited, or modified such Native File; and (ii) information generated automatically by the operation of a computer or other information technology system when a Native File is created, modified, transmitted, deleted or otherwise manipulated by a user of such system. Meta-Data is a subset of ESI.

B.     "Native File(s)" means ESI in the electronic format of the application in which such ESI is normally created, viewed and/or modified. Native Files are a subset of ESI.

C.     "Static Image(s)" means a representation of ESI produced by converting a Native File into a standard image format capable of being viewed and printed on standard computer systems. In the absence of agreement of the parties or order of Court, a Static Image should be provided in either Tagged Image File Format (TIFF, or .TIF files) or Portable Document Format (PDF). If load files were created in the process of converting Native Files to Static Images, or if load files may be created without undue burden or cost, load files should be produced together with Static Images.

## CONFERENCE OF PARTIES AND REPORT

4.     The parties are encouraged to consider conducting a Conference of Parties to discuss discovery of ESI regardless of whether such a Conference is ordered by the Court. The Conference of Parties should be conducted in person whenever practicable. Within 10 calendar days thereafter,

the parties may wish to file, or the Court may order them to file, a joint report regarding the results of the Conference. This process is also encouraged if applicable, in connection with a subpoena for ESI under Fed.R.Civ.P. 45. The report may state that the parties do not desire discovery of ESI, in which event Paragraphs 4A and B are inapplicable.

A.    The report should, without limitation, state in the section captioned "Disclosure or discovery of electronically stored information should be handled as follows," the following:

(1)    Any areas on which the parties have reached agreement and, if any, on which the parties request Court approval of that agreement;

(2)    Any areas on which the parties are in disagreement and request intervention of the Court.

B.    The report should, without limitation, if it proposes a "clawback" agreement, "quick peek," or testing or sampling, specify the proposed treatment of privileged information and work product, in a manner that, if applicable, complies with the standard set forth in *Hopson v. Mayor and City Council of Baltimore*, 232 F.R.D. 228 (D.Md. 2005), and other applicable authority. On-site inspections of ESI under Fed.R.Civ.P. 34(b) should only be permitted in circumstances where good cause and specific need have been demonstrated by the party seeking disclosure of ESI (the "Requesting Party"), or by agreement of the parties. In appropriate circumstances the Court may condition on-site inspections of ESI to be performed by independent third party experts, or set such other conditions as are agreed by the parties or

deemed appropriate by the Court.

C.      Unless otherwise agreed by the parties, the report described by this provision should be filed with the Court prior to the commencement of discovery of ESI.

## NEED FOR PRIOR PLANNING

5.      Insofar as it relates to ESI, prior planning and preparation is essential for a Conference of Parties pursuant to Fed.R.Civ.P. 16, 26(f), and this Protocol. Counsel for the Requesting Party and Counsel for the party producing, opposing, or seeking to limit disclosure of ESI ("Producing Party") bear the primary responsibility for taking the planning actions contained herein. Failure to reasonably comply with the planning requirements in good faith may be a factor considered by the Court in imposing sanctions.

## EXCHANGE OF INFORMATION BEFORE RULE 26(f) CONFERENCE

6.      Insofar as it relates to ESI, in order to have a meaningful Conference of Parties, it may be necessary for parties to exchange information prior to the Fed.R.Civ.P. 26(f) Conference of Parties. Parties are encouraged to take the steps described in ¶7 of this Protocol and agree on a date that is prior to the Fed.R.Civ.P. 26(f) Conference of Parties, on which agreed date they will discuss by telephone whether it is necessary or convenient to exchange information about ESI prior to the conference.

A.      A reasonable request for prior exchange of information may include information relating to network design, the types of databases, database dictionaries, the access control list and security access logs and rights of individuals to access the system and specific files and applications, the ESI

document retention policy, organizational chart for information systems personnel, or the backup and systems recovery routines, including, but not limited to, tape rotation and destruction/overwrite policy.

B.   An unreasonable request for a prior exchange of information should not be made.

C.   A reasonable request for a prior exchange of information should not be denied.

D.   To the extent practicable, the parties should, prior to the Fed.R.Civ.P. 26(f) Conference of Parties, discuss the scope of discovery of ESI, including whether the time parameters of discoverable ESI, or for subsets of ESI, may be narrower than the parameters for other discovery.

E.   Prior to the Fed.R.Civ.P. 26(f) Conference of Parties, Counsel should discuss with their clients and each other who will participate in the Fed.R.Civ.P. 26(f) Conference of Parties.  This discussion should specifically include whether one or more participants should have an ESI coordinator (*see* Paragraph 7.B) participate in the Conference.  If one participant believes that the other should have an ESI coordinator participate, and the other disagrees, the Requesting Party should  state its reasons in a writing sent to all other parties within a reasonable time before the Rule 26(f) Conference.  If the Court subsequently determines that the Conference was not productive due to the absence of an ESI coordinator, it may consider the letter in conjunction with any request for sanctions under Fed.R.Civ.P. 37.

## <u>PREPARATION FOR RULE 26(f) CONFERENCE</u>

7.     Prior to the Fed.R.Civ.P. 26(f) Conference of Parties, Counsel for the parties should:

A.     Take such steps as are necessary to advise their respective clients, including, but not limited to, "key persons" with respect to the facts underlying the litigation, and information systems personnel, of the substantive principles governing the preservation of relevant or discoverable ESI while the lawsuit is pending.  As a general principle to guide the discussion regarding litigation hold policies, Counsel should consider the following criteria:

(1)     Scope of the "litigation hold," including:

(a)     A determination of the categories of potentially discoverable information to be segregated and preserved;

(b)     Discussion of the nature of issues in the case, as per Fed.R.Civ.P. 26(b)(1);

(i)     Whether ESI is relevant to only some or all claims and defenses in the litigation;

(ii)     Whether ESI is relevant to the subject matter involved in the action;

(c)     Identification of "key persons," and likely witnesses and persons with knowledge regarding relevant events;

(d)     The relevant time period for the litigation hold;

(2)     Analysis of what needs to be preserved, including:

(a)     The nature of specific types of ESI, including, email and

attachments, word processing documents, spreadsheets, graphics and presentation documents, images, text files, hard drives, databases, instant messages, transaction logs, audio and video files, voicemail, Internet data, computer logs, text messages, or backup materials, and Native Files, and how it should be preserved:

(b)     the extent to which Meta-Data, deleted data, or fragmented data, will be subject to litigation hold;

(c)     paper documents that are exact duplicates of ESI;

(d)     any preservation of ESI that has been deleted but not purged;

(3)     Determination of where ESI subject to the litigation hold is maintained, including:

(a)     format, location, structure, and accessibility of active storage, backup, and archives;

    (i)     servers;

    (ii)    computer systems, including legacy systems;

    (iii)   remote and third-party locations;

    (iv)    back-up media (for disasters) vs. back-up media for archival purposes/record retention laws;

(b)     network, intranet, and shared areas (public folders, discussion databases, departmental drives, and shared network folders);

(c)     desktop computers and workstations;

(d)     portable media; laptops; personal computers; PDA's; paging devices; mobile telephones; and flash drives;

(e)     tapes, discs, drives, cartridges and other storage media;

(f)     home computers (to the extent, if any, they are used for business purposes);

(g)     paper documents that represent ESI.

(4)     Distribution of the notification of the litigation hold:

(a)     to parties and potential witnesses;

(b)     to persons with records that are potentially discoverable;

(c)     to persons with control over discoverable information; including:

(i)     IT personnel/director of network services;

(ii)     custodian of records;

(iii)     key administrative assistants;

(d)     third parties (contractors and vendors who provide IT services).

(5)     Instructions to be contained in a litigation hold notice, including that:

(a)     there will be no deletion, modification, alteration of ESI subject to the litigation hold;

(b)     the recipient should advise whether specific categories of ESI subject to the litigation hold require particular actions (*e.g.,* printing paper copies of email and attachments) or transfer

into "read only" media;

(c)     loading of new software that materially impacts ESI subject to the hold may occur only upon prior written approval from designated personnel;

(d)     where Meta-Data, or data that has been deleted but not purged, is to be preserved, either a method to preserve such data before running compression, disk defragmentation or other computer optimization or automated maintenance programs or scripts of any kind ("File and System Maintenance Procedures"), or the termination of all File and System Maintenance Procedures during the pendency of the litigation hold in respect of Native Files subject to preservation;

(e)     reasonably safeguarding and preserving all portable or removable electronic storage media containing potentially relevant ESI;

(f)     maintaining hardware that has been removed from active production, if such hardware contains legacy systems with relevant ESI and there is no reasonably available alternative that preserves access to the Native Files on such hardware.

(6)     Monitoring compliance with the notification of litigation hold, including:

        (a)     identifying contact person who will address questions regarding preservation duties;

        (b)     identifying  personnel with responsibility to confirm that compliance requirements are met;

        (c)     determining whether data of "key persons" requires special handling (*e.g.,* imaging/cloning hard drives);

        (d)     periodic checks of logs or memoranda detailing compliance;

        (e)     issuance of periodic reminders that the  litigation hold is still in effect.

B.     Identify one or more information technology or information systems personnel to act as the ESI coordinator and discuss ESI with that person;

C.     Identify those personnel who may be considered "key persons" by the events placed in issue by the lawsuit and determine their ESI practices, including those matters set forth in Paragraph 7.D, below.  The term "key persons" is intended to refer to both the natural person or persons who is/are a "key person(s)" with regard to the facts that underlie the litigation, and any applicable clerical or support personnel who directly prepare, store, or modify ESI for that key person or persons, including, but not limited to, the network administrator, custodian of records or records management personnel, and an administrative assistant or personal secretary;

D.    Become reasonably familiar[2] with their respective clients' current and relevant past ESI, if any, or alternatively, identify a person who can participate in the Fed.R.Civ.P. 26(f) Conference of Parties and who is familiar with at least the following:

(1)    Email systems; blogs; instant messaging; Short Message Service (SMS) systems; word processing systems; spreadsheet and database systems; system history files, cache files, and cookies; graphics, animation, or document presentation systems; calendar systems; voice mail systems, including specifically, whether such systems include ESI; data files; program files; internet systems; and, intranet systems. This Protocol may include information concerning the specific version of software programs and may include information stored on electronic bulletin boards, regardless of whether they are maintained by the party, authorized by the party, or officially sponsored by the party; provided however, this Protocol extends only to the information to the extent such information is in the possession, custody, or control of such party. To the extent reasonably possible, this includes the database program used over the relevant time, its database dictionary, and the manner in which such program records

---

[2] As used herein, the term "reasonably familiar" contemplates a heightened level of familiarity with any ESI that is identified by opposing counsel pursuant to Paragraph 6 of this Protocol, however, that level of familiarity is conditioned upon the nature of the pleadings, the circumstances of the case, and the factors contained in Fed.R.Civ.P. 26(b)(2)(C).

transactional history in respect to deleted records.

(2)    Storage systems, including whether ESI is stored on servers, individual hard drives, home computers, "laptop" or "notebook" computers, personal digital assistants, pagers, mobile telephones, or removable/portable storage devices, such as CD-Roms, DVDs, "floppy" disks, zip drives, tape drives, external hard drives, flash, thumb or "key" drives, or external service providers.

(3)    Back up and archival systems, including those that are onsite, offsite, or maintained using one or more third-party vendors. This Protocol may include a reasonable inquiry into the back-up routine, application, and process and location of storage media, and requires inquiry into whether ESI is reasonably accessible without undue burden or cost, whether it is compressed, encrypted, and the type of device on which it is recorded (*e.g.,* whether it uses sequential or random access), and whether software that is capable of rendering it into usable form without undue expense is within the client's possession, custody, or control.

(4)    Obsolete or "legacy" systems containing ESI and the extent, if any, to which such ESI was copied or transferred to new or replacement systems.

(5)    Current and historical website information, including any potentially relevant or discoverable statements contained on that or those site(s),

13

as well as systems to back up, archive, store, or retain superseded, deleted, or removed web pages, and policies regarding allowing third parties' sites to archive client website data.

(6)     Event data records automatically created by the operation, usage, or polling of software or hardware (such as recorded by a motor vehicle's GPS or other internal computer prior to an occurrence), if any and if applicable, in automobiles, trucks, aircraft, vessels, or other vehicles or equipment.

(7)     Communication systems, if any and if applicable, such as ESI records of radio transmissions, telephones, personal digital assistants, or GPS systems.

(8)     ESI erasure, modification, or recovery mechanisms, such as Meta-Data scrubbers or programs that repeatedly overwrite portions of storage media in order to preclude data recovery, and policies regarding the use of such processes and software, as well as recovery programs that can defeat scrubbing, thereby recovering deleted, but inadvertently produced ESI which, in some cases, may even include privileged information.

(9)     Policies regarding records management, including the retention or destruction of ESI prior to the client receiving knowledge that a claim is reasonably anticipated.

(10)    "Litigation hold" policies that are instituted when a claim is

reasonably anticipated, including all such policies that have been instituted, and the date on which they were instituted.

(11)    The identity of custodians of key ESI, including "key persons" and related staff members, and the information technology or information systems personnel, vendors, or subcontractors who are best able to describe the client's information technology system.

(12)    The identity of vendors or subcontractors who store ESI for, or provide services or applications to, the client or a key person; the nature, amount, and a description of the ESI stored by those vendors or subcontractors; contractual or other agreements that permit the client to impose a "litigation hold" on such ESI; whether or not such a "litigation hold" has been placed on such ESI; and, if not, why not.

E.    Negotiation of an agreement that outlines what steps each party will take to segregate and preserve the integrity of relevant or discoverable ESI. This agreement may provide for depositions of information system personnel on issues related to preservation, steps taken to ensure that ESI is not deleted in the ordinary course of business, steps taken to avoid alteration of discoverable ESI, and criteria regarding the operation of spam or virus filters and the destruction of filtered ESI.

**TOPICS TO DISCUSS AT RULE 26(f) CONFERENCE**

8.    The following topics, if applicable, should be discussed at the Fed.R.Civ.P. 26(f) Conference of Parties:

A.  The anticipated scope of requests for, and objections to, production of ESI, as well as the form of production of ESI and, specifically, but without limitation, whether production will be of the Native File, Static Image, or other searchable or non-searchable formats.

(1)  If the parties are unable to reach agreement on the format for production, ESI should be produced to the Requesting Party as Static Images. When the Static Image is produced, the Producing Party should maintain a separate file as a Native File and, in that separate file, it should not modify the Native File in a manner that materially changes the file and the Meta-Data.  After initial production in Static Images is complete, a party seeking production of Native File ESI should demonstrate particularized need for that production.

(2)  The parties should discuss whether production of some or all ESI in paper format is agreeable in lieu of production in electronic format.

(3)  When parties have agreed or the Court has ordered the parties to exchange all or some documents as electronic files in Native File format in connection with discovery, the parties should collect and produce said relevant files in Native File formats in a manner that preserves the integrity of the files, including, but not limited to, the contents of the file, the Meta-Data (including System Meta-Data, Substantive Meta-Data, and Embedded Meta-Data, as more fully described in Paragraph 11 of this Protocol) related to the file, and the

file's creation date and time. The general process to preserve the data integrity of a file may include one or more of the following procedures: (a) duplication of responsive files in the file system (*i.e.,* creating a forensic copy, including a bit image copy, of the file system or pertinent portion), (b) performing a routine copy of the files while preserving Meta-Data (including, but not limited to, creation date and time), and/or (c) using reasonable measures to prevent a file from being, or indicate that a file has been, modified, either intentionally or unintentionally, since the collection or production date of the files. If any party desires to redact contents of a Native File for privilege, trade secret, or other purposes (including, but not limited to, Meta-Data), then the Producing Party should indicate that the file has been redacted, and an original, unmodified file should be retained at least during the pendency of the case.

B.    Whether Meta-Data is requested for some or all ESI and, if so, the volume and costs of producing and reviewing said ESI.

C    Preservation of ESI during the pendency of the lawsuit, specifically, but without limitation, applicability of the "safe harbor" provision of Fed.R.Civ.P. 37, preservation of Meta-Data, preservation of deleted ESI, back up or archival ESI, ESI contained in dynamic systems[3], ESI destroyed

---

[3] A "dynamic system" is a system that remains in use during the pendency of the litigation and in which ESI changes on a routine and regular basis, including the automatic deletion or overwriting of such ESI.

or overwritten by the routine operation of systems, and, offsite and offline ESI (including ESI stored on home or personal computers). This discussion should include whether the parties can agree on methods of review of ESI by the responding party in a manner that does not unacceptably change Meta-Data.

 (1) If Counsel are able to agree, the terms of an agreed-upon preservation order may be submitted to the Court;

 (2) If Counsel are unable to agree, they should attempt to reach agreement on the manner in which each party should submit a narrowly tailored, proposed preservation order to the Court for its consideration.

D. Post-production assertion, and preservation or waiver of, the attorney-client privilege, work product doctrine, and/or other privileges in light of "clawback," "quick peek," or testing or sampling procedures, and submission of a proposed order pursuant to the holding of *Hopson v. Mayor and City Council of Baltimore,* 232 F.R.D. 228 (D.Md. 2005), and other applicable precedent. If Meta-Data is to be produced, Counsel may agree, and should discuss any agreement, that Meta-Data not be reviewed by the recipient and the terms of submission of a proposed order encompassing that agreement to the Court. Counsel should also discuss procedures under which ESI that contains privileged information or attorney work product should be immediately returned to the Producing Party if the ESI appears on its face to

have been inadvertently produced or if there is prompt written notice of inadvertent production by the Producing Party. The Producing Party should maintain unaltered copies of all such returned materials under the control of Counsel of record. This provision is procedural and return of materials pursuant to this Protocol is without prejudice to any substantive right to assert, or oppose, waiver of any protection against disclosure.

E.   Identification of ESI that is or is not reasonably accessible without undue burden or cost, specifically, and without limitation, the identity of such sources and the reasons for a contention that the ESI is or is not reasonably accessible without undue burden or cost, the methods of storing and retrieving that ESI, and the anticipated costs and efforts involved in retrieving that ESI. The party asserting that ESI is not reasonably accessible without undue burden or cost should be prepared to discuss in reasonable detail, the information described in Paragraph 10 of this Protocol.

F.   Because identifying information may not be placed on ESI as easily as bates-stamping paper documents, methods of identifying pages or segments of ESI produced in discovery should be discussed, and, specifically, and without limitation, the following alternatives may be considered by the parties: electronically paginating Native File ESI pursuant to a stipulated agreement that the alteration does not affect admissibility; renaming Native Files using bates-type numbering systems, *e.g.,* ABC0001, ABC0002, ABC0003, with some method of referring to unnumbered "pages" within each file; using

19

software that produces "hash marks" or "hash values" for each Native File; placing pagination on Static Images; or any other practicable method. The parties are encouraged to discuss the use of a digital notary for producing Native Files.

G.     The method and manner of redacting information from ESI if only part of the ESI is discoverable. As set forth in Paragraph 11.D, if Meta-Data is redacted from a file, written notice of such redaction, and the scope of that redaction, should be provided.

H.     The nature of information systems used by the party or person or entity served with a subpoena requesting ESI, including those systems described in Paragraph 7.D above. This Protocol may suggest that Counsel be prepared to list the types of information systems used by the client and the varying accessibility, if any, of each system. It may suggest that Counsel be prepared to identify the ESI custodians, for example, by name, title, and job responsibility. It also may suggest that, unless impracticable, Counsel be able to identify the software (including the version) used in the ordinary course of business to access the ESI, and the file formats of such ESI.

I.     Specific facts related to the costs and burdens of preservation, retrieval, and use of ESI.

J.     Cost sharing for the preservation, retrieval and/or production of ESI, including any discovery database, differentiating between ESI that is reasonably accessible and ESI that is not reasonably accessible; provided

however that absent a contrary showing of good cause, *e.g.,* Fed.R.Civ.P. 26(b)(2)(C), the parties should generally presume that the Producing Party bears all costs as to reasonably accessible ESI and, provided further, the parties should generally presume that there will be cost sharing or cost shifting as to ESI that is not reasonably accessible. The parties may choose to discuss the use of an Application Service Provider that is capable of establishing a central respository of ESI for all parties.

K. Search methodologies for retrieving or reviewing ESI such as identification of the systems to be searched; identification of systems that will not be searched; restrictions or limitations on the search; factors that limit the ability to search; the use of key word searches, with an agreement on the words or terms to be searched; using sampling to search rather than searching all of the records; limitations on the time frame of ESI to be searched; limitations on the fields or document types to be searched; limitations regarding whether back up, archival, legacy or deleted ESI is to be searched; the number of hours that must be expended by the searching party or person in conducting the search and compiling and reviewing ESI; and the amount of pre-production review that is reasonable for the Producing Party to undertake in light of the considerations set forth in Fed.R.Civ.P. 26(b)(2)(C).

L. Preliminary depositions of information systems personnel, and limits on the scope of such depositions. Counsel should specifically consider whether limitations on the scope of such depositions should be submitted to the Court

with a proposed order that, if entered, would permit Counsel to instruct a witness not to answer questions beyond the scope of the limitation, pursuant to Fed.R.Civ.P. 30(d)(1).

M.  The need for two-tier or staged discovery of ESI, considering whether ESI initially can be produced in a manner that is more cost-effective, while reserving the right to request or to oppose additional more comprehensive production in a latter stage or stages.  Absent agreement or good cause shown, discovery of ESI should proceed in the following sequence: 1) after receiving requests for production of ESI, the parties should search their ESI, other than that identified as not reasonably accessible without undue burden or cost, and produce responsive ESI within the parameters of Fed.R.Civ.P. 26(b)(2)(C); 2) searches of or for ESI identified as not reasonably accessible should not be conducted until the prior step has been completed; and, 3) requests for information expected to be found in or among ESI that was identified as not reasonably accessible should be narrowly focused, with a factual basis supporting each request.

N.  The need for any protective orders or confidentiality orders, in conformance with the Local Rules and substantive principles governing such orders.

O.  Any request for sampling or testing of ESI; the parameters of such requests; the time, manner, scope, and place limitations that will voluntarily or by Court order be placed on such processes; the persons to be involved; and the dispute resolution mechanism, if any, agreed-upon by the parties.

P.        Any agreement concerning retention of an agreed-upon Court expert, retained at the cost of the parties, to assist in the resolution of technical issues presented by ESI.

## PARTICIPANTS

9.        The following people:

A        Should, absent good cause, participate in the Fed.R.Civ.P. 26(f) Conference of Parties: lead counsel and at least one representative of each party.

B.        May participate in the Fed.R.Civ.P. 26(f) Conference of Parties: clients or representatives of clients or the entity served with a subpoena; the designated ESI coordinator for the party; forensic experts; and in-house information system personnel. Identification of an expert for use in a Fed.R.Civ.P. 26(f) Conference of Parties does not, in and of itself, identify that person as an expert whose opinions may be presented at trial within the meaning of Fed.R.Civ.P. 26(b)(4)(A, B).

C.        If a party is not reasonably prepared for the Fed.R.Civ.P. 26(f) Conference of Parties in accordance with the terms of this Protocol, that factor may be used to support a motion for sanctions by the opposing party for the costs incurred in connection with that Conference.

## REASONABLY ACCESSIBLE

10.        No party should object to the discovery of ESI pursuant to Fed.R.Civ.P. 26(b)(2)(B) on the basis that it is not reasonably accessible because of undue burden or cost unless the objection has been stated with particularity, and not in conclusory or boilerplate language. Wherever the term

"reasonably accessible" is used in this Protocol, the party asserting that ESI is not reasonably accessible should be prepared to specify facts that support its contention.

## PRINCIPLES RE: META-DATA

11.    The production of Meta-Data apart from its Native File may impose substantial costs, either in the extraction of such Meta-Data from the Native Files, or in its review for purposes of redacting non-discoverable information contained in such Meta-Data. The persons involved in the discovery process are expected to be cognizant of those costs in light of the various factors established in Fed.R.Civ.P. 26(b)(2)(C). The following principles should be utilized in determining whether Meta-Data may be discovered:

A.    Meta-Data is part of ESI. Such Meta-Data, however, may not be relevant to the issues presented or, if relevant, not be reasonably subject to discovery given the Rule 26(b)(2)(C) cost-benefit factors. Therefore, it may be subject to cost-shifting under Fed.R.Civ.P. 26(b)(2)(C).

B.    Meta-Data may generally be viewed as either System Meta-Data, Substantive Meta-Data, or Embedded Meta-Data. System Meta-Data is data that is automatically generated by a computer system. For example, System Meta-Data often includes information such as the author, date and time of creation, and the date a document was modified. Substantive Meta-Data is data that reflects the substantive changes made to the document by the user. For example, it may include the text of actual changes to a document. While no generalization is universally applicable, System Meta-Data is less likely to involve issues of work product and/or privilege.

C.     Except as otherwise provided in sub-paragraph E, below, Meta-Data, especially substantive Meta-Data, need not be routinely produced, except upon agreement of the requesting and producing litigants, or upon a showing of good cause in a motion filed by the Requesting Party in accordance with the procedures set forth in the Local Rules of this Court.   Consideration should be given to the production of System Meta-Data and its production is encouraged in instances where it will not unnecessarily or unreasonably increase costs or burdens. As set forth above, upon agreement of the parties, the Court will consider entry of an order approving an agreement that a party may produce Meta-Data in Native Files upon the representation of the recipient that the recipient will neither access nor review such data. This Protocol does not address the substantive issue of the duty to preserve such Meta-Data, the authenticity of such Meta-Data, or its admissibility into evidence or use in the course of depositions or other discovery.

D.     If a Producing Party produces ESI without some or all of the Meta-Data that was contained in the ESI, the Producing Party should inform all other parties of this fact, in writing, at or before the time of production.

E.      Some Native Files contain, in addition to Substantive Meta-Data and/or System Meta-Data, Embedded Meta-Data, which for purposes of this Protocol, means the text, numbers, content, data, or other information that is directly or indirectly inputted into a Native File by a user and which is not typically visible to the user viewing the output display of the Native File on

screen or as a print out. Examples of Embedded Meta-Data include, but are not limited to, spreadsheet formulas (which display as the result of the formula operation), hidden columns, externally or internally linked files (*e.g.,* sound files in Powerpoint presentations), references to external files and content (*e.g.,* hyperlinks to HTML files or URLs), references and fields (*e.g.,* the field codes for an auto-numbered document), and certain database information if the data is part of a database (*e.g.,* a date field in a database will display as a formatted date, but its actual value is typically a long integer).  Subject to the other provisions of this Protocol related to the costs and benefits of preserving and producing Meta-Data (see generally Paragraph 8), subject to potential redaction of Substantive Meta-Data, and subject to reducing the scope of production of Embedded Meta-Data, Embedded Meta-Data is generally discoverable and in appropriate cases, *see* Fed.R.Civ.P. 26(b)(2)(C),  should be produced as a matter of course.  If the parties determine to produce Embedded Meta-Data, either in connection with a Native File production or in connection with Static Image production in lieu of Native File production,  the parties should normally discuss and agree on use of appropriate tools and methods to remove other Meta-Data, but preserve the Embedded Meta-Data, prior to such production.

Signed: May 14, 2007

Frank D. Whitney
United States District Judge